CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/26/2022

LAURA A. AUSTIN, CLERK
BY:   s/ CARMEN AMOS
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| KATHERINE T.,[1] | CASE NO. 6:21-cv-7 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[2] | JUDGE NORMAN K. MOON |
| *Defendant.* | |

## I.    Introduction

This matter is before the Court on the Parties' cross motions for summary judgment. Dkts. 13, 20. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. In his Report and Recommendation ("R&R"), Judge Ballou determined that the Commissioner of Social Security ("Commissioner's") final decision was supported by substantial evidence and advised this Court to deny Katherine's motion and grant the Commissioner's motion. Dkt. 22. Katherine timely filed her objections, Dkt. 23, obligating the Court to undertake a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). The Commissioner also filed a timely response to Katherine's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

objections. Dkt. 25. The Court finds that Katherine's objections are without merit and adopts Judge Ballou's R&R in full.

## II.    Standard of Review

Objections to a magistrate judge's R&R under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's R&R to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *Farmer*, 177 F. App'x at 330–31.

However, objections that merely reiterate arguments raised in front of the magistrate judge "are considered to be general objections to the entirety of the [R&R]" and such general objections do not permit *de novo* review. *Janice S. v. Berryhill*, No. 7:17CV00196, 2018 WL 4625628, at *2 (W.D. Va. Sept. 26, 2018); *see also Veney v. Astrue*, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008)). Thus, "[a] plaintiff, unsatisfied by the findings and recommendation of the magistrate judge, cannot seek re-argument of her case in the guise of an objection." *Hammack v. Berryhill*, No. 7:16CV00314, 2017 WL 4203545, at *3 (W.D. Va. Sept. 21, 2017); *see also Janice S.*, 2018 WL 4625628, at *2.

In conducting its review, the Court must affirm the Administrative Law Judge ("ALJ's") factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 340 (4th Cir.

2012). Substantial evidence requires more than a mere scintilla of evidence, but less than a preponderance. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). The Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and must defer to the ALJ's decision where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," *Johnson*, 434 F.3d at 653.

"Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the Court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

### III.    Background

#### A.  The ALJ Decision

On October 4, 2018, Katherine filed for disability insurance benefits (DIB) under the Social Security Act (Act), 42 U.S.C. §§ 401–403. Administrative Record ("R.") 19, 207, 210. She alleged that she became disabled due to edema and pain in her legs and feet beginning on December 1, 2017. *Id.* Because she currently has insurance through December 31, 2023, she must demonstrate that her disability began before or on this date and existed for twelve continuous months to receive DIB. R. 22; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20

C.F.R. §§ 404.101(a), 404.131(a). The state agency denied her applications at the initial review, R. 64–76, and on reconsideration, R. 79–91.

On June 24, 2020, the ALJ presided over a hearing to consider Katherine's claims for DIB. R. 35–63. On July 16, 2020, the ALJ entered his decision, denying her claim for benefits. R. 19–30; *see* R. 20 ("conlud[ing] the claimant has not been under a disability within the meaning of the Social Security Act from December 1, 2017, through the date of this decision"). In making his decision, the ALJ worked through the standard five-step inquiry to determine if Katherine was disabled by considering whether she (1) was engaged in substantial gainful activity ("SGA");[3] (2) had a severe medical impairment; (3) had an impairment listed or equivalent to one listed in the Social Security Act's regulations; (4) could return to her past relevant work based on her residual functional capacity ("RFC"); and, if she could not, (5) whether she could perform other work based on his RFC. 20 C.F.R. § 404.1520(a)(4); *see Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).

At step one, the ALJ found that Katherine was insured at the time of the alleged disability onset date, December 1, 2017, and that she had "not engaged in substantial gainful activity since December 1, 2017." R. 22. The ALJ found at step two that she has "severe" impairments of metatarsalgia, edema, and obesity because they significantly limit her ability to perform basic work activities. *Id.* However, at step three, he found that she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 22 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526).

---

[3] "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).

At step four, the ALJ found that Katherine has the RFC to perform sedentary work with certain limitations. R. 23. He specifically concluded that "she can lift and carry 20 pounds occasionally and 10 pounds frequently, but stand and walk for only two hours in an eight-hour workday; no more than occasionally operate foot controls or climb; and never work around unprotected heights, such as ladders, ropes, and scaffolds." R. 23. The ALJ then found that she can perform her past work as a reception clerk and an insurance sales agent. R. 29–30. Because the ALJ determined that Katherine could return to past work in step 4, the ALJ did not proceed to step five, which considers whether the claimant could perform other work if unable to return to past relevant work. *See generally* R. 23, 30.

The ALJ concluded that Katherine did not have "a disability, as defined in the Social Security Act, from December 1, 2017, through the date of this decision." R. 30. On January 7, 2021, the Appeals Counsel denied Katherine's request for review. R. 1–6.

### B. The R&R

In the R&R addressing the Parties' cross motions for summary judgment, Dkts. 13, 20, the magistrate judge concluded that the ALJ's final decision was supported by substantial evidence. Dkt. 22. In making this decision, the magistrate judge considered three allegations raised by Katherine: (1) the ALJ failed to properly determine the RFC findings, (2) the ALJ did not fully consider the effect of her impairment of obesity on the other impairments and the RFC findings, and (3) the ALJ failed to assess her allegations regarding her symptoms. *Id.* at 4.

In response to the first allegation, the magistrate judge found that "the evidence cited by Katherine [in her motion for summary judgment] was not ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's RFC determination that Katherine can perform

sedentary work with certain limitations." *Id.* at 9. He concluded that the ALJ had substantial

evidence to support his RFC findings. *Id.* at 9–14. For the second allegation, the magistrate judge

found that "the ALJ properly reviewed and assessed the impact of Katherine's obesity and how

obesity was factored into her RFC determination." *Id.* at 14. In response to the third allegation,

the magistrate judge found that the "ALJ, as the fact-finder, was entitled to find that the objective

medical evidence outweighed Katherine's subjective statements, and he provided a sufficient

rationale for doing so." *Id.* at 18.


### C.  Medical History

During an orthopedic evaluation with James Chandler, M.D, on September 22, 2017,

Katherine reported a three-year history of atraumatic right foot pain that she treated with

medication and a series of cortisone injections that have only partially relieved the pain. R. 301.

On October 25, 2017, Dr. Chandler placed Katherine in a fixed ankle walking boot for pre-

surgical support, R. 299, and on November 20, 2017, he performed right gastric recession

surgery for her metatarsalgia right foot, R. 408. At the November visit, Katherine provided that

she had no foot pain relief with exercise, stretching, change in footwear, or injections. R. 297.

On December 5, 2017, Katherine had her first post-surgery follow-up visit with Dr.

Chandler, who advised her to continue using the ankle walking boot for three to four weeks. R.

295. Dr. Chandler advised Katherine on December 13, 2017 to elevate her leg at work and to ice

her foot for up to twenty minutes per hour to reduce the swelling. *Id.* On December 20, 2017, at

another follow-up visit with Dr. Chandler, Katherine reported that she had little discomfort in her

calf, and Dr. Chandler noted that her foot was completely healed and that she had mild swelling

and skin contact irritation. R. 294. He further advised her that she no longer needed to wear the

ankle boot because Katherine's venous duplex study of the right lower extremity showed no evidence of acute deep venous thrombosis or superficial venous thrombosis. R. 294, 314–16.

On January 12, 2018, Katherine visited her treating physician, Tara Wickline-Stone, FNP. R. 348. Katherine reported swelling in her right lower extremity and discomfort in her calf and foot that had persisted since her surgery in November. R. 348. Ms. Wickline-Stone prescribed Katherine medicine to reduce the swelling. R. 348–49. Dr. Chandler found that Katherine had mild swelling throughout her right leg on February 12, 2018. R. 293. On February 13, 2018, William Epstein, M.D., found that Katherine's venous duplex study of the right lower extremity indicated no evidence of acute deep venous thrombosis or superficial venous thrombosis. R. 312–14.

On April 23, 2018, William Tung, M.D., provided a surgical evaluation for Katherine's edema. R. 517. At this visit, Katherine stated that she had chronic leg swelling on her right calf, which had increased since her surgery. R. 517. From the examination, Dr. Tung concluded that she had moderate edema of the right leg and mild edema of the left leg without venous stasis, and he noted that she had difficulty walking due to her swelling. R. 518. He prescribed her thigh-high compression stockings, recommended that she elevate her legs, and referred her for a venous reflux study and a lymphedema clinic. R. 518. The venous duplex studies of Katherine's right lower extremity in May 2018 and May 2019 were both negative and indicated no evidence of deep or superficial venous thrombosis. R. 333, 446.

On October 31, 2018, Katherine visited Ms. Wickline-Stone. R. 341. Because Katherine had a BMI of 33.83, Ms. Wickline-Stone advised her to follow a healthy diet and exercise routine. R. 342. Katherine visited Ms. Wickline-Stone again on June 7, 2019 and complained of pain and swelling in the right leg and calf. R. 456. Ms. Wickline-Stone concluded that Katherine

had pain from muscle strain; however, her right leg had no swelling with a normal range of motion. R. 457. Ms. Wickline-Stone advised Katherine to use pool therapy and to not use exercise machines for a week. *Id.*

Katherine had another visit with Ms. Wickline-Stone on January 27, 2020, and complained about severe fatigue for months, daily generalized joint pain, pain on the bottom of her feet, and unexplained weight gain over the last two years. R. 460. At the time, Katherine weighed 201 pounds with a BMI of 35.60. R. 461. Ms. Wickline-Stone recommended that Katherine work on a healthy diet with an exercise plan, and she found that Katherine had chronic fatigue, unexplained weight gain, unspecified joint pain, and other chronic pain. *Id.* On June 3, 2020, Ms. Wickline-Stone held a telemedicine session with Katherine during which Katherine described bilateral lower extremity pain and burning in the posterior area of her feet. R. 463. Ms. Wickline-Stone concluded that Katherine had leg pain and prescribed her medicine. R. 464.

### D. Medical Opinion Evidence

The record reflects medical opinions that were considered by the ALJ in making his determination and are relevant for the Court's *de novo* review.

Okwuchukwu Obi, M.D., held a consultative examination with Katherine on March 17, 2019. R. 376. She told Dr. Obi that her bilateral leg and foot problems affected her ability to work due to the pain and difficulty with walking, sitting, and standing. *Id.* According to the exam results, Katherine had a steady gait, did not need an assistive device, had "3+ pitting edema of the bilateral lower extremity right worse than left," and was able to move without difficulty. R. 380. Dr. Obi found that Katherine can sit and walk normally in an eight-hour workday with normal breaks, stand for forty-five minutes at a time in an eight-hour work week before requiring

a break due to her edema, does not need assistive device, and can carry fifteen pounds frequently and twenty pounds occasionally. R. 380. He also concluded that she had "no manipulative limitations on reaching, handling, feeling, grasping, fingering, pushing [and] pulling." R. 380. The ALJ found that Dr. Obi's opinion was persuasive in showing that Katherine was restricted to sedentary work with light weightlifting and carrying. R. 27.

On March 25, 2019, Katherine had a medical consultation with William Rutherford, Jr., M.D. R. 73. He concluded that she can frequently lift and carry twenty-five pounds and that she can sit, stand, and walk with normal breaks for about six hours in an eight-hour workday. *Id.* He further concluded that she does not have manipulative or environmental limitations. R. 73–74. The ALJ found his opinion unpersuasive in light of the evidence presented at the hearing supporting greater limitations for Katherine. R. 29.

On June 25, 2020, Ms. Wickline-Stone concluded that it is medically necessary for Katherine while sitting to elevate both legs at waist level to reduce knee pain and swelling. R. 509. She also determined that Katherine could sit for more than three hours if provided an accommodation for her legs to be elevated at waist level. R. 509. Ms. Wickline-Stone noted that Katherine after sitting for the maximum continuous time must stand or walk for less than fifteen minutes before returning to sit down and that she is unable to stand or walk for one hour in an eight-hour workday. R. 510. She further concluded that Katherine needed a total of more than six hours for lying down or reclining during the eight-hour workday to alleviate pain. R. 511. She found that Katherine is unable to carry any weight throughout the workday on a sustained basis, and on average, Katherine would likely be absent from work once a month due to her impairments or treatments. R. 514. Ms. Wickline-Stone also noted that these restrictions had occurred since at least December 1, 2017. R. 513. The ALJ found that Ms. Wickline-Stone's

opinion was unpersuasive because it was inconsistent with her medical treatment notes and the record. R. 28.

## IV.    Analysis

Katherine raises the following objections: (1) the ALJ's RFC findings were not supported by substantial evidence, (2) the ALJ failed to properly consider the impact of Katherine's obesity on her other impairments and the RFC findings, and (3) the ALJ failed to properly consider Katherine's subjective allegations. Dkt. 23.

These objections are substantially similar to the arguments raised on her motion for summary judgment. *Compare* Dkt. 13 (Plaintiff's motion for summary judgment) *with* Dkt. 25 (Plaintiff's objections to R&R). "A plaintiff, unsatisfied by the findings and recommendation of the magistrate judge, cannot seek re-argument of her case in the guise of an objection." *Hammack*, 2017 WL 4203545, at *3. While her objections appear substantially like the arguments raised in her motion for summary judgment, the Court finds that she has highlighted slightly new argumentation for her objections and proceeds on a *de novo* review. In its *de novo* review, the Court finds that all three of Katherine's objections lack merit.

### A.  Objection to the RFC Findings

Katherine claims that the ALJ's RFC findings were not supported by substantial evidence. Dkt. 23 at 1–4. To support this claim, she argues that the ALJ failed to properly consider objective evidence that she claims outweighs the ALJ's RFC findings. *Id.* The Court finds that her objection to the ALJ's RFC findings lacks merit.

Specifically, Katherine claims that the ALJ's RFC findings fail to include the narrative

discussion required by SSR 96-8p. Dkt. 23 at 2. Under the SSR 96-8p, an RFC assessment "is a

function-by-function assessment based upon all of the relevant evidence of an individual's ability

to do work-related activities." SSR 96-8P, 1996 WL 374184 at *3 (S.S.A. July 2, 1996). In an

RFC assessment, the ALJ must provide a narrative discussion, which describes "how the

evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

The ALJ also "must discuss the individual's ability to perform sustained work activities in

an ordinary work setting on a regular and continuing basis" and detail "the maximum amount of

each work-related activity the individual can perform based on the evidence available in the case

record." *Id.* The Fourth Circuit has also held that "'[a] necessary predicate to engaging in

substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion

of which evidence the ALJ found credible and why, and specific application of the pertinent

legal requirements to the record evidence.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)

(quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Ultimately, the ALJ must explain

the conclusions reached and any inconsistencies or ambiguities in the evidence. *Id.*

The Fourth Circuit has rejected a per se rule requiring remand when the ALJ fails to

conduct a function-by-function analysis, but the Court has explained that "[r]emand may be

appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions,

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis

frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting

*Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). In *Mascio*, for example, the

Fourth Circuit remanded the ALJ's decision in part because the ALJ failed to detail why the

plaintiff had the ability to perform certain functions for a full workday and for failing to give weight to two residential functional capacity assessments that conflicted with each other. *Id.* at 637.

In the case at hand, the ALJ "'include[d] a narrative discussion describing how the evidence supports each conclusion.'" *Mascio*, 780 F.3d at 636 (quoting SSR 96-8P, 1996 WL 374184 at *7)). The ALJ also provided substantial evidence to support the RFC findings and allow for meaningful review. *See id.* The ALJ's findings provided sufficient evidence to support each of the ALJ's conclusions, including citing to medical treatments and opinions, *id.*, and nonmedical evidence, such as Katherine's testimony, *see, e.g.*, R. 26 (finding that Katherine's "allegations about the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with other evidence"). The RFC findings also included that Katherine could perform sedentary work in an eight-hour workday. *See* R. 23 (concluding Katherine "can lift and carry 20 pounds occasionally and 10 pounds frequently, but stand and walk for only two hours in an eight-hour workday; no more than occasionally operate foot controls or climb; and never work around unprotected heights, such as ladders, ropes, and scaffolds"); SSR 96-8P, 1996 WL 374184 at *7 (providing that the ALJ must detail "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record"). Thus, unlike *Mascio*, the ALJ's decision in this case provided sufficient evidence for a meaningful review and considered and explained conflicting evidence, such as noting the inconsistency between the medical opinion of Ms. Wickline-Stone and her medical treatment notes. *See* R. 28.

Katherine also claims that the ALJ failed to consider various pieces of evidence when making his RCF findings. These include failing to explain (1) how the findings of the lack of motor weakness, sensory loss, and no acute distress "undermine the other substantial evidence of

record documenting plaintiff's severe edema," Dkt. 23 at 2, (2) how the RFC limitation of standing and walking for only two hours in the eight-hour workday accommodated Katherine's edema when evidence indicated that her edema persists while seated, *id.*, and (3) the special accommodations provided by Katherine's employer, *id.* at 3.

First, in his RFC assessment, the ALJ weighed the lack of motor weakness, sensory loss, and no acute distress results alongside the evidence showing Katherine's edema. For example, the ALJ explained that "[d]espite the claimant's subjective complaints of leg swelling and pain in June 2019, a physical examination showed normal range of motion in her right leg without pain, and 'no swelling,' although the claimant did have pain on palpation over her right posterior thigh." R. 26. He also considered the evidence of Katherine's edema in weighing Dr. Obi's opinion on the postural and environmental limitations, *see* R. 380, by noting that Dr. Obi's opinion did "not go far enough to address [Katherine's] leg and foot problems," and concluded "that greater limitations are warranted in terms of foot control operations, climbing and exposure to unprotected heights." R. 28. Thus, the ALJ did not fail to explain how the findings of the lack of motor weakness, sensory loss, and no acute distress impacted "the other substantial evidence of record documenting plaintiff's severe edema." Dkt. 23 at 2.

Second, the ALJ considered Katherine's edema when making its RFC limitation of standing and walking for only two hours in the eight-hour workday. For example, the ALJ considered evidence that showed Katherine's edema caused her pain and even deviated from Dr. Obi's medical opinion to include greater limitations to accommodate her pain. R. 28. Additionally, the ALJ weighed Ms. Wickline-Stone's medical opinion that recommended Katherine must elevate her legs to waist level while sitting for her edema. *Id.* However, he found this opinion unpersuasive since Ms. Wickline-Stone's prior treatment notes did not recommend

13

leg elevation to Katherine. *Id.* He also noted ways that Katherine has managed her edema in past. *See* R. 28 (noting that "the edema has been conservatively managed with medications and recommendations to wear compression hose, though the claimant has not been wearing the stockings as directed due to poor fit"). The ALJ thus evaluated evidence supporting that Katherine's edema persisted while seated but determined that the weight of the evidence supported that she did not need to elevate her legs during the workday. *Id.*

Third, even though the ALJ did not explicitly mention Katherine's accommodation of leg elevation with her previous employer in his findings, the ALJ sufficiently assessed Katherine's alleged need to elevate her legs as discussed above, finding that the accommodation was unnecessary in an eight-hour workday. R. 25–29.

Katherine challenges the weight that the ALJ gave to the expert opinions of Dr. Obi, Dr. Tung, and Ms. Wickline-Stone. Dkt. 23 at 2. Under SSR 96-8P, 1996 WL 374184 at *7, the ALJ, in the RFC assessment, "must always consider and address medical source opinions." "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Additionally, 20 C.F.R. § 404.1520c governs the ALJ's decision since Katherine filed her application in October 2018.[4] The ALJ must consider every medical opinion in the evidence and "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2021). "Rather, an ALJ must determine and explain whether he finds a given medical opinion persuasive." *Jennifer C. D. v. Kilakazi*, No. 3:21CV280, 2022 WL 4272301, at *3 (E.D. Va. Sept. 15, 2022) (citing 20 C.F.R. §§

---

[4] 20 C.F.R. §§ 404.1520c, 416.920c applies to petitioner claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017)).

404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5)). The regulations note that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in [his] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Rather, the ALJ will consider the "most important factors" of "supportability" and "consistency" when determining how persuasive he finds a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" is defined as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" is defined as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). An ALJ may "'explain how [he] considered [other factors] ... when [he] articulate[s] how [he] considers medical opinions,'" but he is not required to do so. *Jennifer C. D.*, 2022 WL 4272301, at *3 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). "[T]he ALJ need not refer to every piece of evidence he considered in making his conclusions." *Id.* (citing *Reid* v. *Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)).

Katherine argues that the ALJ did not properly consider factors and the record in determining the persuasiveness of Ms. Wickline-Stone's medical opinion. Dkt. 23 at 2–4. The Court disagrees. The ALJ's determination that Ms. Wickline-Stone's opinion was unpersuasive complied with the "supportability" and "consistency" factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Justifying the "supportability" factor, the ALJ referenced a consultation examination, Ms. Wickline's treatment notes on Katherine, Katherine's medical treatment history, and Katherine's history of performing part-time sedentary work until fall 2019. R. 28.

For the "consistency" factor, the ALJ's determination that Ms. Wickline-Stone's opinion was unpersuasive aligned with other medical evidence in the record. The ALJ, for example, noted that Ms. Wickline-Stone's proposed limitation that Katherine must elevate her legs at work was inconsistent with Ms. Wickline-Stone's treatment notes in 2018 and 2019, which did not recommend leg elevation to Katherine. *Id.* The ALJ highlighted that Ms. Wickline-Stone's opinion was inconsistent with Dr. Obi's consultation examination, which found that Katherine had mild difficulty walking but otherwise was able to move around without much difficulty. *Id.* The ALJ also found that Ms. Wickline-Stone's proposed limitation of Katherine needing to miss work approximately once a month was inconsistent with Katherine only visiting Ms. Wickline-Stone about every three months and the "lack of documented follow-up with [Katherine's] other providers since about mid-2018." *Id.* The ALJ further found that Ms. Wickline-Stone's opinion was generally inconsistent with Katherine's ability to perform part-time sedentary work until fall 2019. *Id.* This evidence demonstrates that the ALJ's finding on Ms. Wickline-Stone's opinion is supported by substantial evidence.

Katherine also argues that the ALJ improperly "made assumptions that the elevation limitations were temporary even though neither Dr. Tung nor Dr. Chandler made such assertions." Dkt. 23 at 3. However, there is substantial evidence to support the ALJ's findings that Dr. Chandler and Dr. Tung's opinions were "unpersuasive due to the postsurgical context, and [that there was] *lack of any duration* assigned to the recommendations." R. 29 (emphasis added). In support of finding that the recommendations lacked specific duration, the ALJ noted that Dr. Chandler did not repeat his recommendation for Katherine to elevate her legs in a subsequent treatment with Katherine and that Dr. Tung encouraged Katherine to elevate her legs but did not provide any "details as to the frequency or duration of this recommendation, and did

not suggest that the need for leg elevation would be an ongoing restriction." *Id.* The ALJ also noted other evidence that supported finding that their opinions were "unpersuasive due to the postsurgical context," such as Katherine's duplex study giving a negative result and Ms. Wickline-Stone not recommending that Katherine elevate her legs in her 2018 and 2019 treatment notes. *Id.* Thus, substantial evidence exists to support the ALJ's conclusions on Dr. Chandler's and Dr. Tung's opinions. *See generally Johnson*, 434 F.3d at 653.

Katherine claims that the ALJ failed to properly explain why he found the opinion of Dr. Obi more persuasive than Dr. Yung's and Ms. Wickline-Stone's opinions, Dkt. 23 at 2. However, as discussed above, the ALJ properly considered the evidence and record when evaluating the opinions of Dr. Obi, Dr. Yung, and Ms. Wickline-Stone. R. 27–29. The ALJ even deviated from Dr. Obi's opinion, indicating that the ALJ weighed medical evidence that conflicted with Dr. Obi's opinion in making his RFC findings. *See* R. 28 (providing that Dr. Obi's opinion "do[es] not go far enough to address [Katherine's] leg and foot problems"). Accordingly, the ALJ discussed conflicting medical opinions and cited specific evidence that could result in a reasonable mind finding that Dr. Yung's and Ms. Wickline-Stone's opinions were unpersuasive. R. 28–29.

Importantly, the Court cannot reweigh the medical opinion evidence considered by the ALJ; instead, the Court's review is limited to determining whether the ALJ applied the appropriate legal standard and has substantial evidence to support the RFC findings. *See Hancock*, 667 F.3d at 472; *see also Bryan S. v. Kijakazi*, No. 7:20CV00358, 2021 WL 5278741, at *5 (W.D. Va. Aug. 4, 2021), *report and recommendation adopted*, No. 7:20-CV-00358, 2021 WL 4443061 (W.D. Va. Sept. 28, 2021) (providing that plaintiff's "citations to contradictory

statements in the medical records amounts to his impermissibly asking the court to reweigh the evidence").

While there is conflicting medical opinion evidence in Katherine's case, the Court must defer to the ALJ's decision because the "conflicting evidence allows reasonable minds to differ as to whether [Katherine] is disabled," *Johnson*, 434 F.3d at 653. Thus, the Court finds that Katherine's objection to the RFC findings lack merit.

### B. Objection to the ALJ's Consideration of Katherine's Obesity

Next, Katherine claims that the ALJ failed to properly consider the impact of her obesity on her other impairments and the RFC findings. Dkt. 23 at 4–5. While Katherine acknowledges that the ALJ mentioned obesity in his decision, she argues that "[m]erely stating obesity was considered is not sufficient under SSR 19-2p." *Id.* at 4.

In assessing the RFC, "an ALJ should consider the combined effect of all the claimant's medical impairments." *Kimberly W. v. Comm'r of Soc. Sec.*, No. 4:19-CV-00023, 2021 WL 827075, at *3 (W.D. Va. Mar. 3, 2021), *report and recommendation adopted*, No. 4:19CV00023, 2021 WL 1232101 (W.D. Va. Mar. 31, 2021) (citing 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e)). "The regulations acknowledge that obesity may compound the effects of other impairments." *Id.; see also* SSR 02-1p, 2002 WL 34686281, at *6 ("Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record."). The claimant's obesity must be considered by the ALJ in steps two through five of the standard five-step inquiry. *See Kimberly W.*, 2021 WL 827075, at *5. An ALJ is not required to provide a detailed analysis of the claimant's obesity, but "a total failure to examine

18

obesity in a disability hearing constitutes reversible error." *Richards v. Astrue*, No. 6:11cv17, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012); *see also Kimberly W.*, 2021 WL 827075, at *5.

For example, in *Kimberly W.*, 2021 WL 827075, at *5, a court in this district remanded the case to the Commissioner because the ALJ only mentioned obesity without providing any analysis of its impact on his findings. The court found that the "ALJ's utter lack of analysis or explanation constitutes a near total failure to examine the effects of [claimant's] obesity." *Id.*

Unlike *Kimberly W.*, 2021 WL 827075, at *5, there is not an "utter lack of analysis" of Katherine's obesity in the case at hand. Instead, the ALJ considered and weighed the impact of Katherine's obesity on her other impairments and the RFC findings throughout the decision. R. 22–30. The ALJ found obesity to be a severe impairment at step two, R. 22, and discussed obesity pursuant to SSR 19-2p at step three. R. 23 (providing "the functional limitations caused by obesity, considered alone and in combination with the claimant's other medically determinable impairments, do not medically equal any potentially relevant listing"). At step four, the ALJ provided

> Pursuant to Social Security Ruling 19-2p, the potential limiting effects of obesity have been considered in finding that the claimant is restricted to a range of sedentary work. The longitudinal medical evidence shows body mass index (BMI) values in the low- to mid-30s over time (e.g., 4F/8, 16F/2, 16F/6). The claimant's obesity could exacerbate her pain and edema. However, even considered in combination with the claimant's other medically determinable impairments, the obesity does not appear to cause complications in the claimant's body to a degree that would cause further work-related limitations beyond those stated above.

R. 27. Additionally, the ALJ, in assessing the RFC findings, emphasized the "persistence of the claimant's signs and symptoms over the period at issue, in combination with *obesity*" in "conclud[ing] that greater limitations are warranted in terms of foot control operations, climbing, and exposure to unprotected heights." R. 28 (emphasis added); *see also* R. 29 (finding the

medical consultant's assessment unpersuasive because of Katherine's "persistent lower extremity edema and pain complaints . . . as well as her Obesity").[5]

In sum, the ALJ provided analysis on Katherine's obesity throughout the decision unlike *Kimberly W.*, 2021 WL 827075, at *5. Thus, the Court finds this objection lacks merit.


### C. Objection to Subjective Allegations

Lastly, Katherine argues that the ALJ did not have substantial evidence to support his analysis of Katherine's subjective allegations. Dkt. 23 at 5–6. Specifically, she claims that the ALJ did not evaluate the medical evidence documenting Katherine's persistent edema. *Id.* at 6. She also claims that the ALJ failed to "qualify the extent to which plaintiff performed the daily activities cited by the ALJ in support of his conclusion that plaintiff's allegations were not consistent with the evidence of record." *Id.* at 5.

The Court finds that the ALJ properly considered medical evidence documenting Katherine's edema in making the RFC findings. *See, e.g.*, R. 25 ("find[ing] that the claimant's metatarsalgia and edema could reasonably be expected to produce the symptoms"); R. 26 (noting that "claimant's allegations about the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with other evidence"); R. 28 (concluding that "greater limitations are warranted in terms of foot control operations, climbing, and exposure to unprotected heights" to account for the "persistence of the claimant's signs and symptoms over the period at issue").

Importantly, the Court's role is not to reweigh evidence considered by the ALJ. *See Hancock*, 667 F.3d at 476 (deciding that it would not reweigh evidence that was already

---

[5] As addressed above, since the ALJ determined that Katherine could return to past work in step 4, the ALJ did not proceed to step 5, which considers whether the claimant could perform other work if unable to return to past relevant work. *See generally* R. 23, 30.

considered by the ALJ in determining the plaintiff's adoptive functioning). Since the ALJ considered the extent to which Katherine performed daily activities in his RFC findings and applied the appropriate legal standard, the Court will not reweigh this evidence. *See, e.g.*, R. 25 (providing that Katherine's daily activities is a factor relevant to the symptoms analysis). Additionally, the Court gives "great weight" to the ALJ's observations of Katherine's credibility since the ALJ had "the opportunity to observe the demeanor and to determine the credibility of [Katherine]." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Because the ALJ's decision is supported by substantial evidence, the Court will not reweigh Katherine's subjective allegations. *See generally Hancock*, 667 F.3d at 476. Thus, the Court finds that Katherine's last objection lacks merit.

## V.    Conclusion

For the foregoing reasons, Plaintiff's objections to the R&R will be overruled and the Court will adopt Judge Ballou's R&R in full. The Court will issue an accompanying order.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

ENTERED this 26th day of September, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE